# United States Court of Appeals
# for the Federal Circuit

---

**IGT,**

*Plaintiff-Cross Appellant,*

**v.**

**BALLY GAMING INTERNATIONAL, INC., BALLY
TECHNOLOGIES, INC.,**
AND **BALLY GAMING, INC. (DOING BUSINESS AS
BALLY TECHNOLOGIES),**

*Defendants-Appellants.*

---

2010-1364, -1365

---

Appeals from the United States District Court for the District of Delaware in case no. 06-CV-0282, Judge Sue L. Robinson.

---

Decided: October 6, 2011

---

DEANNE E. MAYNARD, Morrison & Foerster LLP, of Washington, DC, argued for plaintiff-cross appellant. With her on the brief were ALEXANDER J. HADJIS, BRIAN R. MATSUI and MARC A. HEARRON. Of counsel on the brief was DAVID P. ENZMINGER, O'Melveny & Meyers, LLP, of Los Angeles, California.

EDWARD J. DEFRANCO, Quinn Emanuel Urquhart & Sullivan, LLP, of New York, New York, argued for defendants-appellants. With him on the brief were ALEXANDER RUDIS; and CHARLES K. VERHOEVEN, of Los Angeles, California. Of counsel was JACK B. BLUMENFELD, Morris, Nicols, Arsht & Tunnell LLP, of Wilmington, Delaware.

––––––––––––

Before NEWMAN, LOURIE, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

Bally Gaming International, Inc., Bally Technologies, Inc., and Bally Gaming, Inc. (Bally collectively) appeal the district court's grant of summary judgment of infringement of certain claims of U.S. reissue patent nos. RE37,885 ('885 patent) and RE38,812 ('812 patent) owned by IGT. IGT cross appeals the district court's grant of summary judgment of noninfringement of certain claims of the two patents-in-suit. We affirm.

## BACKGROUND

The patents-in-suit share a common specification and are reissues of U.S. patent nos. 5,752,882 and 5,836,817. The specifications describe a networked system of gaming machines shown in figure 1:



Fig.1

The patents describe a system for controlling networked gaming devices 12-16 and 22-26. The gaming devices shown here are a type "having a pull handle for initiating a game, e.g., slot machines." '885 patent col.7 ll.17-18. The gaming devices are connected to floor controllers 18 and 28. The floor controllers monitor the activity on the gaming devices and may issue certain commands to reconfigure the gaming devices. *Id.* col.7 ll.25-31. The

floor controllers interface with file servers 32-36. The file servers store data and generate usage reports related to the gaming devices.

Using this architecture, the patents-in-suit describe and claim methods for rewarding players over and above the normal device payouts. *Id.* col.3 ll.11-18. The floor controller configures a gaming device to pay out extra money if certain conditions are met. *Id.* col.6 ll.59-62. For example, the gaming devices may be configured to payout a bonus when a player bets a certain amount of money. *Id.* col.3 ll.10-15. These bonuses and promotions may be used to encourage players to use gaming devices during typically slow periods such as late nights during the week.

The '885 patent claims at issue generally contain three steps: 1) tracking activity of a group of gaming devices, 2) issuing a command to the gaming devices when a predetermined event occurs, and 3) paying in accordance with that command. The '812 patent claims at issue generally contain four steps: 1) issuing an initial command establishing the criteria to cause a bonus to be paid upon the occurrence of a predetermined event, 2) storing the command at a controller for a gaming device, 3) transmitting a pay command to the gaming device upon the occurrence of the predetermined event, and 4) paying at the gaming device responsive to the command. The primary difference between the claims of the two patents is the requirement in the '812 patent claims to initially send the command to the gaming device establishing the criteria for a payout.

IGT accused Bally of infringing these claims when it offers two promotions—Power Rewards and Power Winners. The configuration for both promotions generally includes a host computer that communicates with a

controller. The controller, in turn, manages a number of gaming devices. Power Rewards incentivizes players by rewarding them based on their game play at a particular machine. It is commonly known as a "Play X, Get Y" promotion. For example, it could be a play $100, get $10 promotion that rewards a player each time the player reaches $100 in bets on a particular machine. Power Rewards allows a casino operator to define the limits of the promotion including the participating machines and the times. When a player comes to the machine, the player inserts an identification card. In response to the card insertion, the host computer sends a "transaction #151" to the controller associated with the gaming device. Transaction #151 includes the "Play X, Get Y" amount that applies. The controller monitors the play and, when the Play X amount is reached, the controller causes the gaming device to display a "Promo" key. The player activates the Promo key to place money in an account. More than one player may win a Power Reward during the promotion.

The other accused promotion is Power Winners. Rather than rewarding players for specific amounts spent, Power Winners randomly selects a single player for a bonus. Power Winners applies to a set of devices selected by the casino operator. During the time period set aside for promotion, the system periodically decides whether to award a bonus. To decide whether to award a bonus, the system splits the allotted time into 125 segments. At the end of each segment, the system generates a random number that determines if that time segment should produce a winner (the exact mechanism for this is not relevant to the appeal). If not, then the promotion continues. If there is to be a winner, the system then randomly selects a winner from the qualified players playing

on the machines. Power Winners only has a single bonus for each promotional time period.

The method of payout for Power Winners is important to this appeal. There are two pay methods. In the first method, ACSC, the system pays out using a transaction #151 message. It is set to Play $0, Get Y. Thus, the winner immediately can access the "Promo" key. In the second method, SDS/CMP, the user is simply notified that he or she has won the promotion and it is paid out through the casino's accounting system.

The district court construed a number of claim terms and turned to the question of infringement on summary judgment. The district court determined that, as a matter of law, the Power Rewards promotion infringes claims 10, 33, and 46 of the '885 patent and claims 21 and 44 of the '812 patent. *IGT v. Bally Gaming Int'l Inc.*, 610 F. Supp. 2d 288, 305-06 (D. Del. 2009). Regarding the '885 patent claims, the district court determined that the transaction #151 message is a "command" or "message" under the claims. *Id.* at 301. As noted above, the '812 patent claims require that the system issue a command establishing the criteria for a bonus and subsequently, the occurrence of a predetermined event to pay the bonus. The district court determined that the transaction #151 message is the "command" and the "predetermined event" is the player's fulfillment of the "Play X" requirement. *Id.* at 303.

The district court determined that Power Winners in its ACSC embodiment infringes claims 10 and 46 of the '885 patent. *Id.* at 310. The court held that the predetermined event is the random selection that a given time period should produce a winner. *Id.* at 308-09. The court further held that the "command" is the transaction #151 message set to Play $0, Get Y that causes the gaming device to pay out. *Id.* at 308. Finally, the court granted

summary judgment of noninfringement by the SDS/CMP embodiment because the only possible "command" does not cause payment, but merely notifies a winner. *Id.*

Bally appeals arguing that the district court erred in a number of its claim constructions and in its grant of summary judgment of infringement. IGT cross appeals arguing that the district court erred in certain other claim term constructions. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's grant of summary judgment *de novo*. *ICU Med., Inc. v. Alaris Med. Sys. Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

I. Claim Construction

We review claim construction *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc). The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

Independent claim 10 of the '885 patent includes many of the claim terms in dispute:

A method of operating gaming devices interconnected by a host computer having a user-operated input device comprising:

associating each gaming device with a unique address code;

preselecting less than all of the gaming devices interconnected by the host computer . . .;

using the network to track activity of the preselected gaming devices;

issuing a *command* over the network to *one* of said preselected gaming devices *responsive to a predetermined event*; and

*paying* at said *one* gaming device *in accordance with the command.*

(emphases added). We address the disputed claim terms in turn.

## A. "one"

Claim 10 of the '885 patent requires "issuing a command over the network to *one* of said preselected gaming devices" and "paying at said *one* gaming device in accordance with the command." Bally argues that we should construe "one" to require that the command be sent to one and only one machine during a promotional period. It argues that there can be only one command sent to only one machine. Similarly it argues that payment can be made at only one gaming device. Bally contends that because Power Rewards pays at more than one gaming device, it cannot be held to infringe. Bally argues that we have held that the meaning of "one" is "one and only one" citing *WMS Gaming, Inc. v. International Game Technologies*, 184 F.3d 1339, 1350 (Fed. Cir. 1999). Bally argues that, like *WMS Gaming*, the claims here rely on the "one" language for antecedent basis with the requirement of "paying at said one gaming device." Bally argues that this shows that the command (and thus any bonus)

must only be awarded to a single player at a single device. Bally also points to the fact that other claims use the terms "each" gaming device (claim 1 of the '885 patent) or "at least one" gaming device (claim 33 of the '885 patent). It argues that this shows that when IGT claimed "one" gaming device in claim 10 of the '885 patent, it meant one and only one device could receive a payout.

Bally also argues that the three different types of claims ("one," "at least one," and "each") correspond to types of promotions expressly disclosed in the specification. For example, according to Bally, the disclosed "mystery bonus" may occur after a specific number of coins are played, and thus could be paid on "each" device. Appellant's Br. 27 (citing '885 patent col.36 ll.42-44). It argues that this shows that the applicants specifically claimed different embodiments and intended the word "one" to mean only one.

IGT contends that the claims do not limit the system to pay out at a single one of the preselected devices. It argues that the claims only require that a single command pay out at a single machine. In other words, as long as one command goes to one machine and causes that machine to pay out, that command meets the claim limitation regardless of how many other commands are sent. IGT also notes that Bally ignores claim 21 of the '812 patent that states the command is sent to "only one" gaming device. It argues that this shows that the applicants knew how to claim a "one and only one" embodiment and that the word "one" should not be so limiting. Finally, IGT argues that the three examples from the specification cited by Bally each pay out at one or more gaming devices, so none of them support Bally's conclusion that this claim term must mean "one and only one."

We agree with IGT.  The meaning of the word "one" in this claim is clear from the words that surround it— "issuing a command over the network to *one* of said preselected gaming devices" and "paying at said *one* gaming device in accordance with the command."  Certainly the use of "one" in this claim is limiting in that a command will go to one of the preselected gaming devices.  The command will cause one device to pay.  Hence "one" modifies devices that will receive a particular command, not the number of commands that might be issued.  The second use of "one" further supports this construction – "one" gaming device will pay in accordance with the command.  These claim limitations are directed to a command which will go to one device and cause that same device to pay in response to a predetermined event.  A single command must be issued to a single gaming device.  The claim, however, does not limit the number of commands that could be issued to discrete gaming devices.  Nothing in this limitation requires issuing only one command to only one machine.  Bally would have us rewrite the claim to say "issuing *only one* command . . . to *only one* of said preselected gaming devices."  We refuse to adopt this strained construction.

In addition to the claim language, a number of the promotions described in the preferred embodiments involve multiple commands sent to different devices.  There is no justification for holding as Bally requests that only one machine may receive a command and that only one machine may pay a bonus during a promotional period.  The use of one in these claims clearly modifies the number of machines responsive to a particular command, but nothing in this claim prevents multiple commands to be issued to multiple machines.  Likewise the use of "one" in the pay command modifies the number of devices that will pay in accordance with the command, but does not

prevent the issuance of other pay commands to other machines during the promotional period. *WMS Gaming* does not demand a different result. In *WMS Gaming*, the claim required "selecting one of said . . . numbers" clearly limiting the number selected to one. 184 F.3d at 1350. Here, the claim requires "issuing a command . . . to one of said preselected gaming devices," not issuing *one* command, which would more closely track the language in *WMS Gaming*. We caution that claim language must be construed in the context of the claim in which it appears. Extracting a single word from a claim divorced from the surrounding limitations can lead construction astray.[1] Claim language must be construed in the claim in which it appears.

In light of this construction, the district court correctly granted summary judgment of infringement by Bally's Power Rewards. The fact that Power Rewards pays a bonus at more than one gaming device does not render it noninfringing.

### B.   "transmitting a pay command . . . upon the occurrence of the predetermined event"

This claim term appears in claims 21 and 44 of the '812 patent. The district court construed this term to mean:

> Transmitting an instruction related to payment from the controller to the gaming device in response or reply to the occurrence of one or more conditions chosen in advance. A 'pay command,'

---

[1]   We recognize that in a different district court case, the court construed "one" as one and only one command. *Mikohn Corp. v. Acres Gaming, Inc.*, No. CV-S-97-1383-EJW (LRL) (D. Nev.). As counsel for both sides acknowledged, such a construction was merely persuasive authority and did not bind the district court in this case.

> an instruction related to payment, need not cause payment to be effected 'automatically.'

J.A. 5-6. Bally argues that this term requires that the predetermined event causes the payment and does not cover a gaming device where a pay command is transmitted following some intervening step associated with the player. Bally argues that Power Rewards does not infringe because when the predetermined event occurs (Play X), the gaming device does not pay, it displays a Promo key, which the user then presses in order to cause the payment.

We agree with the district court that this claim term simply means that the system must transmit a pay command when the predetermined event has occurred. The limitation does not mandate a particular method of payment as Bally suggests. Nothing in the plain language of the claims precludes an intervening step by the user to accept payment. Thus, we hold that the district court did not err in its claim construction. Again we see no error in the district court's summary judgment with regard to Bally's Power Rewards.

### C.   "predetermined event"

The district court construed this term to mean "the occurrence of one or more conditions chosen in advance." J.A. 5. During summary judgment, the district court explained that the predetermined event may be random in its occurrence, as long as the condition itself is chosen in advance.

Bally argues that the district court erred because the "predetermined event" cannot be a random event. Instead, Bally claims that it must be something that will occur either at a given time or after a known occurrence (such as a number of slot lever pulls or an amount bet).

Bally argues that the event must be "determined in advance of its occurrence." It argues that the specification only gives examples of predetermined events that are non-random.

IGT responds that the district court correctly gave the term its plain and ordinary meaning—a condition that must be chosen in advance. It relies on the plain language of the claim, "issuing a command over the network . . . responsive to a predetermined event." It argues that this simply means the claim requires a system to monitor network activity and, when a certain condition is met, issue a command. It argues that it is irrelevant whether this is a finite condition (such as the passing of time), or a random condition. It also points to the specification that expressly states that certain bonuses are paid "when certain conditions are met." Appellee's Br. 44 (citing '885 patent col.3 ll.13-15).

Again, the district court correctly construed this term. The claims and the specification only require that some condition be met in order for the system to issue the claimed command. The district court properly held that the predetermined event must be a condition chosen in advance, but there is nothing in the claims or the specification that requires the predetermined event to be finite or non-random. If the condition determined in advance is an entirely random occurrence, it is no less an event. Bally is incorrect that this construction reads "predetermined" out of the claim. If the "predetermined event" is not "chosen in advance," the claim limitation is not met. Although the specification does include examples of non-random conditions, this is not sufficient to redefine the term predetermined event to have anything other than its plain and ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (holding that to act as its own lexicographer, a patentee must

"clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning). Thus, the term "predetermined" retains its plain meaning. Because the predetermined event can include random events (so long as they are predetermined), the district court did not err in concluding that summary judgment was appropriate with regard to Power Winners. Transaction #151, the command at issue in the Power Winners promotion, is sent in response to a predetermined event (the random selection of the winner). As a result, we affirm the district court's grant of summary judgment of infringement.

### D.    "predefined event"

Claims 33 and 46 of the '885 patent use the term "predefined" in place of "predetermined." The district court determined that the two terms have essentially the same meaning, construing "predefined event" to mean "an occurrence based on a criterion or criteria defined in advance." J.A. 4-5. Bally argues that the term "predefined event" is insolubly ambiguous and that the claims should be invalid under 35 U.S.C. § 112 ¶ 2. It argues this because, during prosecution, the applicants indicated that "predefined" is broader than "predetermined." J.A. 1179. It argues that if a predetermined event can be any random event, then predefined event cannot possibly be broader and thus, the claim term must be indefinite.

IGT responds that the term is amenable to construction based on the plain meaning. Further, IGT quotes Bally's expert who stated that the two terms (predetermined and predefined) mean the same thing. Appellee's Br. 49 (citing J.A. 1289).

Indefiniteness is a question of law that we review *de novo*. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1318 (Fed. Cir.

2003). A claim is definite if "one skilled in the art would understand the bounds of the claim when read in light of the specification." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). A claim is only indefinite if it is "not amenable to construction or [is] insolubly ambiguous." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009). We agree that the term "predefined" has a plain and ordinary meaning and is not insolubly ambiguous. We agree with the district court, the term "predefined" means "defined in advance."

It is true that, during prosecution, the applicants stated that the term "predefined" has a broader scope than "predetermined," and that now IGT argues that "predetermined" can be almost any event, random or finite. This does not render "predefined" indefinite. First, the plain language of the claim must control, and the term "predefined" has a well-known definition. Second, the applicant's claim that predefined is even broader than predetermined does not raise to the level of a disclaimer nor does it have sufficient clarity to give the word predefined a meaning other than its plain and ordinary meaning. The patentee did not act as its own lexicographer with regard to "predefined" to cause a departure from the plain and ordinary meaning this term should be given.

As an alternative to its indefiniteness argument, Bally argues that a "predefined event" cannot be random for the same reasons as "predetermined event." Appellant's Br. 48 n.5. For the same reasons stated above regarding "predetermined event," we hold that the district court correctly construed this term.

E.    "paying"

The final limitation of each asserted claim requires "paying" at the gaming device in accordance with a command or message.  The district court held that this payment "need not be effected 'automatically' or without any withdrawal steps . . . ."  J.A. 6.

Restating the arguments it made with regard to the "transmitting a pay command . . . upon the occurrence of the predetermined event" language, Bally argues that we should construe this claim term to exclude any player interaction in the process of accepting payment.  For the same reasons discussed in section I.B, we hold that the district court was correct and that the term "paying" encompasses making payment available for a player to accept.

F.    "command" or "message" – IGT Cross Appeal

The district court construed the term "command" to mean:

> A reconfiguration command.  A reconfiguration command is a command that rearranges the previous configuration of the gaming device so that the gaming device pays out extra money it would not have paid in its previous configuration.

J.A. 2.  As the district court explained, "[t]here are virtually no commands described in the patents that are not related to reconfiguration."  *Id.*  Based on this construction, the district court determined that Power Winners in its SDS/CMP embodiment does not meet this limitation because it merely informs winners of their jackpot winnings; it does not cause the gaming device to pay out.  *IGT*, 610 F. Supp. 2d at 308.

IGT argues that this construction improperly reads limitations from the specification into the claims. It contends that we should adopt the broader definition: "an instruction communicated to or by a computer." According to IGT, the district court imported the word "reconfiguration" into a claim where the patentee did not include it.

Bally argues that the district court's construction of command is correct and supported by the specification and prosecution history, and that the district court was correct that Power Winners SDS/CMP does not infringe. Bally argues that the district court should have also held that Power Winners ACSC did not infringe because its command, transaction # 151, is not a reconfiguration command.

This is not an instance of reading a limitation from the specification into the claim, but rather of interpreting the claim language. Claim 10, for example, states: "paying at said one gaming device in accordance with the command." This language is clear – the payment must occur at the gaming device and be caused by the command. This does not preclude intervening steps, such as customer acceptance. When the word command is viewed in the limitations in which it appears it is clear that the claimed command must issue responsive to a predetermined event and must cause a payment at the gaming device which would not otherwise have occurred. Only a command which meets these express criteria is a command pursuant to this claim. This same analysis applies to the term "message" as it appears in some claims. For example, claim 33 of the '885 patent requires sending a message and "paying . . . in accordance with the message." Thus, as with "command," the claims require that the "message" causes the machine to pay out a bonus it would not have paid in its previous configuration.

The specification strongly supports this construction. For example, the only commands associated with payment in the 59 page '885 patent are all reconfigure commands. The abstract discusses only reconfiguration commands; the summary of the invention discusses only reconfiguration commands; the detailed description of the invention and system overview discusses only reconfiguration commands. The specification discusses how "*each* promotion involves sending a reconfiguration command." '885 patent col. 20 ll.7-8 (emphasis added). It further explains that "the preferred embodiment of the system supports many different reconfiguration commands." *Id.* at col. 23 ll.24-25. Table 1 lists different examples of reconfiguration commands which can be used and Table 2 lists reconfiguration data structures. In every example in the specification, the command which is responsive to the predetermined event reconfigures the system to pay. The only command discussed anywhere in the specification in conjunction with payment is a reconfiguration command.

We hold that the claim language "paying at said one gaming device in accordance with the command" means that the command causes an extra payment to the user at the gaming device that the gaming device would not have paid out. Though we have modified slightly the district court's construction, the modification has no impact on the summary judgment determinations on appeal. In light of our construction and the undisputed facts, the district court's grant of summary judgment of noninfringement of claims 10, 33, and 46 of the '885 patent by Power Winners SDS/CMP is affirmed. There are no facts in dispute. The command, DM33, does not cause "paying at said one gaming device." As the district court explained, "there is no indication of record that DM33 does anything other than inform a player of his bonus winnings." DM33 notifies the player that it has won a bonus

and payment is later made by the casino's accounting system, not at the gaming device. Therefore the district court is correct that a message that simply informs the winning player that he has won is not a "command" or "message" as required by the claims.

Bally argues that the district court erred in its grant of summary judgment of infringement of Power Winners ACSC which it argues does not have a command which reconfigures the gaming device. Bally argues that the transaction #151 message in the Power Winners promotion does not reconfigure the gaming device, it simply tells the gaming device to pay out a particular amount. Again the facts are not in dispute. The transaction #151 message in Power Winners is set to Play $0, Get Y so that the machine immediately pays out the bonus to the winning player.

The district court noted that "[i]n the context of Power Winners, transaction #151 provides a jackpot that was not available under the machine's normal pay table." J.A. 32. There is no dispute that transaction #151 causes an extra payment to the user at the gaming device that the gaming device would not have paid out, therefore it is a command in the context of the claims.

## II. Infringement

The parties' infringement arguments each depend entirely on their respective claim constructions. There are no factual issues on appeal. We affirm the grant of summary judgment of infringement of claims 10, 33, and 46 of the '885 patent and claims 21 and 44 of the '812 patent by the Power Rewards product and claims 10 and 46 of the '885 patent by the Power Winners product in its ACSC embodiment. We also affirm the district court's grant of summary judgment of noninfringement by Power Winners in its SDS/CMP embodiment.

## **AFFIRMED**

### COSTS

No costs.